# Exhibit 9

## Declaration of Josean Kinard

1. My name is Josean Kinard. I am currently incarcerated at the Butner LCSI ("FCI Butner Low") at FCC Butner in the housing unit Granville A. My Bureau of Prisons ("BOP") Register Number is 33603-058.

2. I am 34 years old.

3. I am currently serving a 70-month sentence for 2 counts of drug possession with intent to distribute and possession of a firearm by a person convicted of a felony. My current projected release date is May 9, 2022.

4. When my sentence began in March 2018, I was housed at FCI Butner II ("FCI Butner Medium II"). I was transferred to FCI Butner Low in December of 2019.

5. My housing unit, Granville A, is a dormitory-style unit divided in to roughly 50 cubicles. Each cubicle houses either 2 or 3 men. Cubicles which house 2 men contain one bunk bed, whereas cubicles that house 3 men contain one bunk bed and one single bed. The walls separating each cubicle are only roughly as high as the top bunk of the bunk beds within them.

6. There are 2 people in my cubicle, which is only about 8-10 feet by 8-10 feet in size. When I sleep, I am only about 3 feet away from the nearest person.

7. My entire unit shares the same bathroom, which has about 8 toilets, about 8 sinks, and about 8 showers. Although there are dividers between the toilets and showers, there are no dividers between the sinks. When we use the bathroom, we are basically right next to each other, and it is not possible to maintain 6 feet of distance between myself and the closest person.

8. My entire unit also shares roughly 6 to 8 phones. The phones are cleaned once in the morning by an orderly, but I am not aware of them being cleaned at any other point by BOP staff.

9. The phones are within 2-3 feet of each other, and it is not possible to maintain distance from others while on the phone. We also have to wait in line if all phones are in use, and stand within a foot or two of each other while in this line.

10. There is also a computer room with roughly 5 computers. All but one of the computers are in a row next to each other, only about 18 inches apart. During busy times, it is not possible for me to stay 6 feet away from other people while using the computer.

11. We are no longer allowed to go to the cafeteria for meals, and have been getting our meals by lining up as a unit just outside of the unit door. It is not possible to maintain distance from others when lining up for meals. On at least one occasion, my unit was made to line up for our meals with individuals from one other unit as well.

12. BOP has not provided us access to any hand sanitizer. We are provided with a community supply of soap, which has run out occasionally.

13. The orderlies leave disinfectant spray on a buggy in our unit in the mornings to clean things such as the phones and computers between uses and our bed areas, but we do not have consistent access to rags for use with the disinfectant spray.

14. Though I have heard from the Lieutenant in my unit, Lieutenant Jones, that staff has been told to wear masks, mask-wearing by staff has not been consistent. I have observed at least two correctional officers, Officers Ford and Durant, not wearing masks on a consistent basis. Additionally, the nurse who came into my unit to take the temperatures of individuals who work in the kitchen and in other occupations that leave the unit, was not wearing a mask the morning of May 7, 2020.

15. Everyone in my unit was given 2 fabric masks that we were told were made at UNICOR. We are responsible for cleaning these masks.

16. Like staff, the people in my unit are not wearing their masks consistently either. Whether to wear a mask seems to be up to the discretion of the individual.

17. BOP's enforcement of the requirement to wear masks is also inconsistent. For example, on the morning of May 7, the same morning when a nurse took temperatures of men in my unit without wearing a mask, I saw Lieutenant Jones instruct two men from my unit to go back to their cubicles and get their masks.

18. BOP officials have made announcements a few times, have passed out information, and have hung information on the bulletin boards to inform us about how to avoid getting coronavirus. These resources suggest that we wash our hands, cover our faces, and try to stay away from people.

19. I have not been tested for coronavirus, but on May 12, 2020 I was told that there is at least one confirmed case of coronavirus in my unit.

20. I know of at least one day shift correctional officer who I believe works in both Granville A and the adjacent unit, Granville B.

21. While I believe that there are more staff and people within my unit trying to comply with BOP's guidance to prevent coronavirus from spreading than who are not, I am worried because it only takes one person who does not want to comply to carry the virus, and that seems to be what has happened with the recent spread to my unit.

22. My previous counselor was not available to me for a period of about four weeks. My understanding is that he stopped coming to work. During this period, we were told that if we had anything we needed to communicate with a counselor about, we should send that information to Captain Moore. I reached out to Captain Moore on April 22, 2020 trying to explore my options

to be relocated out of the facility to protect myself against the coronavirus, but have not received a response.

23. I was assigned a new counselor the week of May 4, but it is my understanding that this counselor has also been reassigned out of my unit.

24. If I were released to home confinement, I could live with my mother in Lexington, South Carolina, or with my father in Spindale, North Carolina. Both of my parents live alone, and I would be able to isolate in either of their homes for 14 days if necessary.

25. I filed this lawsuit to make FCC Butner change its policies and practices relating to the protection of the people in its custody from the risk from coronavirus. I am committed to trying to make that happen. I understand that being a class representative in this lawsuit means I will have to make decisions not just in my own interest, but also in the interest of the other people in the class, and I accept that responsibility.

I, Jaclyn Maffetore, certify that I reviewed the information contained in this declaration with Mr. Kinard by telephone on May 12, 2020, and that he certified under penalty of perjury that the information contained in this declaration was true and correct to the best of his knowledge.

   */s/ Jaclyn Maffetore*
Jaclyn Maffetore
ACLU of North Carolina
Legal Foundation, Inc.
Post Office Box 28004
Raleigh, NC 27611
(919) 834-3466
jmaffetore@acluofnc.org