IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-HC-2088-FL

| | | |
|---|---|---|
| CHARLES HALLINAN, JOSEAN KINARD, ARNOLD J. HILL, BENJAMIN D. McRAE, JOHN DAILEY, LEE M. AYERS, GEORGE B. RIDDICK, JORGE LUIS MALDONADO, ANTWAN HARRIS, ANTHONY BUTLER, and TROY A. TITUS, on behalf of themselves and similarly situated individuals, Petitioners/Plaintiffs, | ) ) ) ) ) ) ) ) ) ) | |
| v. | ) ) | DECLARATION OF PHILLIP CLARK |
| THOMAS SCARANTINO, Complex Warden, Federal Correctional Complex Butner; MICHAEL CARVAJAL, Federal Bureau of Prisons Director; and JEFFERY ALLEN, Federal Bureau of Prisons Medical Director, in their official capacities, Respondents/Defendants. | ) ) ) ) ) ) ) ) | |

I, PHILLIP CLARK, do hereby declare as follows:

## I.    PERSONAL BACKGROUND

1.    I am currently employed by the Federal Bureau of Prisons ("BOP") of the United States Department of Justice, as the Supervisory Correctional Systems Specialist and the Complex Case Management Coordinator ("CMC"), at the Federal Correctional Complex in Butner, North Carolina. ("FCC Butner").

**RESPONDENTS' APPENDIX 010**

2.      The CMC's Office is dedicated to providing oversight of case management activities within the institution. This office works directly with the unit teams, providing training and disseminating information to ensure that the institution complies with the BOP Correctional Programs Division's policies and procedures. The CMC provides coordination and oversight of many programs within the institution, including, but not limited to, Central Inmate Monitoring, Financial Responsibility, Admission and Orientation, Inmate Performance Pay, Victim/Witness Program, and Adam Walsh Act compliance. The CMC also oversees the Correctional Systems Department. I have been employed by the BOP since August 28, 1991. I have held my current position of CMC for approximately 13 years, but have worked in Correctional Programs for approximately 23 years.

3.      I make this declaration in connection with the BOP's response to the Temporary Restraining Order and Class Action lawsuit filed by Petitioners Charles Hallinan, Register Number 75207-066; Josean Kinard, Register Number 33603-058; Arnold Hill, Register Number 09077-007; Benjamin McCrae, Register Number 87682-007; John Dailey, Register Number 39637-044; Lee Ayers, Register Number 03882-007; George Riddick, Register Number 72403-053; Jorge Maldonado, Register Number 63756-018; Antwan Harris, Register Number 55584-056; Anthony Butler, Register Number 65583-056; and, Troy Titus, Register Number 58299-083.

4.      I am aware the Petitioners are challenging FCC Butner's actions with respect to the COVID-19 pandemic and seek release from confinement.

2

## II. STRUCTURE OF FCC BUTNER

5. FCC Butner is a federal prison complex that houses five separate institutions: a Federal Medical Center ("FMC Butner" or "FMC"), two medium Federal Correctional Institutions ("FCI Butner I" or "FCI I", and "FCI Butner II" or "the FCI II")), a Low Security Institution ("LSCI Butner" or "LSCI")), and a federal prison camp, ("the Camp", "FPC Butner", or "FPC"). The total rated capacity for the Complex is 4,095 inmates. The current population is 4,360.

6. As of June 1, 2020, FCC Butner housed a total of 1,225 sentenced inmates who are over the age of 50: the FMC has 306 inmates; the FCI I and Camp have a total of 236 inmates; the LSCI has 432 inmates; and, the FCI II has 251 inmates.

### A. FMC Butner

7. FMC Butner is a Medical Referral Center ("MRC") and is a state of the art medical facility comprised of an inpatient mental health unit, medical and surgical units, and a cadre unit that houses working inmates who assist in the day-to-day operations of the facility. Services provided include Chronic Care Clinics, physical therapy, dialysis, wound care, tube feeding, orthopedics, respiratory, postoperative care, and oncology. In addition, it houses approximately 244 inmates residing in the Cadre unit, who assist in the day-to-day operations of the facility. The FMC is the only "enclosed" institution on the Complex, and houses inmates of all security levels, ranging from Minimum security to Maximum security. FMC Butner has a rated capacity of 868 inmates, with an approximate current population of 908.

3

**RESPONDENTS' APPENDIX 012**

8.    The Cadre unit consists of two separate open, dormitory style housing units, housing approximately 154 inmates in each unit.

9.    The remainder of the housing units at the FMC consist of individual cells, housing one to two inmates, based upon the specified mission of the unit, whether it be for mental health inmates, medical or surgical patients, or inmates undergoing ongoing treatments including oncology treatment, dialysis, post-surgery recovery, or physical therapy.

## B. The Camp

10.    Butner FCI I also provides administrative oversight and support to the Federal Prison Camp. The Camp was established in 1991 as the second institution at the complex and consists of four open, dormitory-style housing units: Hatteras East and West, and Catawba East and West. The FPC is primarily an open institution with a small, enclosed area of exterior fencing. FPC inmates are responsible for a variety of duties throughout the complex and in the local communities. Camp inmates work on the following details: Landscaping, outside warehouses, custodial care of the front lobbies and visitation areas at each of the facilities, and general orderly maintenance at the Veterans Hospital in Durham, North Carolina, and the National Guard Armory in Butner, North Carolina. The Chapel of the Camp is located at the back of the compound and is a separate building from the housing Units. The Camp houses only Minimum security level inmates. The Camp has a rated capacity of 296, with a current population of approximately 200 inmates.

## C. FCI Butner I

4

**RESPONDENTS' APPENDIX 013**

11.    FCI Butner I houses medium security inmates clustered in 400-bed "program modules," and a 350-bed progressive treatment Psychiatric Center. Additionally, it houses the Commitment and Treatment Program for individuals deemed sexually dangerous by a court pursuant to 18 U.S.C. § 4248. FCI I administration building contains the Warden's Office, Human Resources Department and the Consolidated Mailroom. The FCI I is comprised of eight housing units. Each unit is named for schools which make up the Atlantic Coast Conference: Clemson, Virginia, Georgia Tech, and Duke units house general population inmates, State and Wake Forest units house Drug Abuse Treatment Program inmates, Maryland unit houses Sex Offender Treatment Program inmates, and North Carolina unit houses Forensic Case Study inmates. The FCI I houses primarily Medium security level inmates only, with exceptions generally for inmates undergoing forensic studies or who have been committed by a federal court. FCI Butner I has a rated capacity of 788, with a current population of 649 inmates.

### D. FCI Butner II

12.    The Federal Correctional Institution or FCI II was the fifth institution constructed at FCC Butner, and is commonly referred to as "The Deuce." The FCI II, which primary houses Medium security level inmates, was activated in 2006, and is located on a hill between the FMC and FCI I. There are approximately 1,527 inmates designated to the FCI II. The FCI II is comprised of three general population housing units, L, M, and O with general population inmates with medical and mental health care levels 1 and 2. The Special Housing Unit, or "SHU" is located at the FCI II and

5

RESPONDENTS' APPENDIX 014

can accommodate 190 inmates. Each housing unit at the FCI II, to include the SHU, is comprised of individual cells, which generally house between one to three inmates per cell.

**E. LSCI Butner**

13. LSCI Butner is comprised of four general population units contained in two separate buildings, with a rated capacity of 992 male inmates. The units consist of dormitory style wings, for a total of eight wings within the institution. Within each unit there are individual housing units named for surrounding counties in North Carolina: Granville, Wake, Durham, and Vance. The LSCI primarily houses Low security level inmates. Currently, LSCI Butner has a population of approximately 1,162 inmates.

## III. BOP'S AUTHORITY TO PLACE INMATES ON HOME CONFINEMENT

14. Although BOP lacks the authority to release an inmate from his sentence, BOP has the sole authority to transfer a prisoner to home confinement for the remainder of his or her sentence pursuant to provisions and limitations set forth 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. See also BOP Program Statement 7320.01, Home Confinement, and BOP Operations Memorandum Home Confinement under the First Step Act.[1]

---

[1] The full text of Program Statement 7320.01, Home Confinement, and BOP Operations Memorandum, Home Confinement Under the First Step Act, are available at https://www.bop.gov/policy/progstat/7320_001_NC-2.pdf, and https://www.bop.gov/policy/om/001-2020.pdf, respectively.

6

## A. BOP's Authority Under 18 U.S.C. § 3624(c)(2)

15.     Under 18 U.S.C. § 3624(c)(2), BOP has the exclusive authority to place an inmate in home confinement for the shorter of 10 percent of the term of imprisonment of or 6 months. BOP, shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under section 3624(c)(2). During the inmate's incarceration, BOP institution staff are responsible for making referrals to Residential Reentry Centers ("RRCs") or home confinement, typically within 17-19 months of the inmate's release date.

16.     In order to appropriately evaluate an individual for home confinement, staff assesses the individual's risk of criminal activity in the community and determines whether there is an appropriate home where the individual can be placed. This is a time and resource intensive process. Upon receipt of the staff assessment, BOP reviews the assessment and makes a final determination regarding home confinement. If approved, and absent any disciplinary infractions, the inmate will serve the remainder of his or her sentence on home confinement.

## B. BOP's Authority Under 24 U.S.C. § 60541

17.     Under 34 U.S.C. § 60541, BOP may release some or all eligible elderly offenders, and eligible terminally ill offenders, from BOP facilities to home detention, upon written request from either BOP staff, or an eligible elderly offender or eligible terminally ill offender. The statute defines "eligible elderly offender" to include an inmate who: 1) is not less than 60 years of age; 2) is  serving

7

a term of imprisonment that is not life imprisonment based on a conviction for an offense or offenses that do not include any crime of violence, sex offense, or other specified offenses, and has served two-thirds of the term of imprisonment to which the offender was sentenced; 3) has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense referenced in the statute; 4) has not been determined by BOP to have a history of violence, or of engaging in conduct constituting a sex offense or other excluded offense; 5) has not escaped, or attempted to escape from a BOP institution; 6) whose release to home detention will result in a substantial net reduction of costs to the Federal Government; and, 7) has been determined by BOP to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

18. "Eligible terminally ill offender" is defined as an offender in the custody of BOP who meets all of the above-stated criteria except the age restriction, and has been determined by a medical doctor approved by BOP (i.e., Clinical Director of the local institution) to be in need of care at a nursing home, intermediate care facility, or assisted living facility, or diagnosed with a terminal illness.

19. In order to appropriately evaluate an elderly or terminally ill individual for home confinement, BOP assesses the individual's risk of criminal activity in the community and determines whether there is an appropriate home where the individual can be placed. As mentioned earlier, this is a time and resource intensive process.

8

**RESPONDENTS' APPENDIX 017**

20. If approved, absent any disciplinary infractions, the inmate would serve the remainder of his or her sentence on home confinement.

21. Pursuant to the statute, a violation by an eligible elderly or terminally ill offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to an appropriate BOP institution, as determined by BOP.

22. Inmates that do not meet the criteria for the elderly home confinement can be placed on home confinement under BOP's general authority to do so, as provided in 18 U.S.C. § 3624(c)(2).

## C. The CARES Act

23. In light of the COVID-19 pandemic, BOP is maximizing its authority to place inmates on home confinement and is expediting the process as much as possible, in furtherance of the Attorney General's memoranda dated March 26, 2020 and April 3, 2020. These documents directed BOP to prioritize the use of its statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic, and provided further guidance concerning criteria to be used.

24. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116–136, authorizes the Attorney General to expand the cohort of inmates who can be considered for home confinement upon his finding of emergency conditions which are materially affecting the function of BOP. On April 3, 2020,

9

**RESPONDENTS' APPENDIX 018**

the Attorney General made that finding and authorized the Director of BOP to immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly situated BOP facilities where COVID-19 is materially affecting operations.

25. BOP has issued several guidance memoranda that govern the evaluation of potentially eligible inmates. The most recent guidance was updated on May 8, 2020. That guidance mandates that the following criteria should be met when reviewing and referring inmates for home confinement: primary offense is not violent; primary or prior offense is not a sex offense; primary or prior offense is not terrorism-related; the inmate does not have any current detainer; the inmate's Mental Health Care Level is less than CARE-MH 4; the inmate has had no incident reports in the past 12 months (inmates who have received a 300 or 400 series report in the past 12 months may be referred for placement if in the Warden's judgment such placement does not create an undue risk to the community); the inmate is a U.S. citizen; inmates with a "Minimum" PATTERN, or recidivism risk score will receive priority treatment; priority is given to inmates residing in Low and Minimum security facilities; and, the inmate has a suitable release plan.

26. As part of this review, not only does an inmate's assigned unit team review his eligibility, but a review is also conducted by the Special Investigative Services Department ("SIS") and the Health Services Department. SIS determines if the inmate has engaged in violent or gang-related activity while in prison. Health

10

Services conducts multiple reviews. Initially, Health Services must determine the age and vulnerability of the inmate related to COVID-19 risk factors, in accordance with CDC and prevention guidelines. Additionally, Health Services reviews the conditions under which the inmate would be confined upon release, to determine whether those conditions would present a lower risk of contracting COVID-19 than the inmate would face at the BOP facility. Health Services also determines whether frequent and on-going medical care is required within the next 90 days.

27. Priority is given to inmates that have served at least 50% of their sentence imposed; or, alternatively, have served at least 25% of their sentence with 18 months or less remaining to serve. Initially, the BOP identified inmates that met the above criteria and had served at least 50% of the sentence imposed. However, in order to increase the number of inmates eligible for home confinement, the BOP changed the criteria to 50% of the statutory sentence (i.e. the sentence length factoring in good conduct time), and added the criteria of 25%, with 18 months remaining, in order to identify additional potentially eligible inmates.

28. The guidance allows for slight deviation and prioritization by officials at BOP. The guidance allows for discretion, and gives the Warden the ability to refer an inmate for placement in the community that does meet all the above-referenced criteria. Referrals made outside of the stated criteria must be forwarded to the BOP's Correctional Programs Division in Central Office for further review.

11

## D. FCC Butner's Review of Home Confinement Eligibility

29.     As with all reviews of an individual's appropriateness for placement in either home confinement or an RRC, the unit team must consider multiple factors, including the individual inmate's proposed release residence, any Supervised Release conditions he may be subject to, as well as his ability to safely reenter the community, such that he will be successful upon release.

30.     FCC Butner began reviewing inmates for home confinement eligibility based upon inmate rosters provided by the BOP's Central Office and the Mid-Atlantic Regional Office staff. The initial roster produced a list of 80-100 potentially eligible inmates at FCC Butner, for unit teams across the Complex to assess for eligibility. This roster took into account many of the discretionary factors, including: projected release date, PATTERN risk, age, percentage of time served, offense category, and public safety factors.

31.     Central Office continues to provide priority roster lists which staff at FCC Butner assess first. The rosters are continually moving down the list of potentially eligible inmates. These now include inmates with Low recidivism or PATTERN risk scores at all institutions across the Complex.

32.     To date, at least 932 inmates have been reviewed for home confinement under the CARES Act. At least 87 inmates have been referred for placement, and 42 have been transferred to home confinement and 9 inmates have transferred to RRCs, since late March, 2020. An additional at least 24 inmates are pending transfer to home confinement or an RRC.

12

33.  Twenty-four inmates are currently awaiting final decision from the BOP's Residential Reentry Management Office, regarding their referral for home confinement.

34.  Since late March 2020, an additional 57 inmates have been released from FCC Butner via compassionate release granted by the individual's sentencing court based upon various issues, including COVID-19.

## IV.  REDUCTION IN SENTENCE/COMPASIONATE RELEASE

35.  As outlined in BOP Program Statement 5050.50, Compassionate Release/Reduction In Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g),[2] upon an inmate's request, the Director of BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(1)(A). The Warden of a BOP institution does not have the authority to grant a compassionate release, as this decision must be made by the Director.

36.  The First Step Act, codified at 18 U.S.C. § 3582, specifies that an inmate may file a Motion for Reduction of Sentence directly to the sentencing court after exhaustion of administrative remedies, or 30 days from the date the Warden receives such a request from the inmate, whichever is earlier. The determination of release is ultimately the decision of the sentencing court.

---

[2] The full text of Program Statement 5050.50, Compassionate Release/Reduction In Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

**RESPONDENTS' APPENDIX 022**

37.    The Bureau has identified several circumstances deemed as "extraordinary or compelling", thereby warranting a compassionate release:

i.    **Terminal Medical Condition** – Inmates who have been diagnosed with a terminal, incurable disease and whose life expectancy is eighteen (18) months or less, and/or has a disease or condition with an end-of-life trajectory under 18 USC § 3582(d)(1).

ii.    **Debilitated Medical Condition** – Inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover. Under this criteria, the BOP should consider a compassionate release if the inmate is:

   i.    Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or
   ii.   Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.

iii.   **"New Law" Elderly Inmates** – Inmates sentenced for an offense that occurred on or after November 1, 1987, who are age 70 years or older and have served 30 years or more of their term of imprisonment.

iv.    **Elderly Inmates with Medical Conditions** – Inmates who fit the following criteria:

   i.    Age 65 and older;
   ii.   Suffer from chronic or serious medical conditions related to the aging process;
   iii.  Experiencing deteriorating mental or physical health that substantially diminishes their ability to function in a correctional facility;
   iv.   Conventional treatment promises no substantial improvement to their mental or physical condition; and,
   v.    Have served at least 50% of their sentence.

14

v.  **Other Elderly Inmates** – Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced.

vi.  **Death or Incapacitation of the Family Member Caregiver** – This criteria includes the death or incapacitation of the family member caregiver of an inmate's biological or legally adopted minor child or children, who are suddenly without a family member caregiver due to that caregiver's death or incapacitation.

vii.  Incapacitation of a Spouse or Registered Partner – This criteria includes the incapacitation of an inmate's spouse or registered partner when the inmate would be the only available caregiver for the spouse or registered partner.

38.  The Bureau has not expanded the criteria for compassionate release to include COVID-19, and particularly an individual's possible exposure to COVID-19. Where an inmate raises COVID-19 as a basis for compassionate release, along with the above-noted criteria, he is reviewed under the criteria as noted above.

39.  All compassionate release requests, regardless of the basis, are initiated at the institution level, by a request submitted to the Warden. The request shall be in writing, and may be submitted by inmate or an individual, on behalf of the inmate.

40.  The request shall identify the extraordinary or compelling circumstances that the requested believes warrants consideration.

**RESPONDENTS' APPENDIX 024**

41. The request shall also include a proposed release plan, which indicates where the inmate will reside, how he will support himself, and if the basis of the request involves his health, information on where the inmate will receive treatment and how the inmate will pay for such treatment.

42. At FCC Butner, all requests for compassionate release are submitted to, or routed to, social workers assigned at each institution. The social workers then confer with the inmate's medical providers, in order to determine the inmate's current medical condition and ability to function independently in the correctional setting.

43. Where an inmate's medical provider determines that he may meet the basic medical criteria for a compassionate release, the social worker then reviews the inmate's proposed release plan, including verifying the proposed residence and discussions with the proposed caregivers. Additionally, in these cases, the inmate's proposed release plan is also forwarded to the appropriate U.S. Probation Office for review and approval.

44. The Bureau of Prisons makes a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only after review of the request by the Warden, the General Counsel, and either the Medical Director for medical referrals or the Assistant Director, Correctional Programs Division for non-medical referrals, and with the approval of the Director, Bureau of Prisons.

45. All FCC Butner Warden promptly review a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A). If the Warden, upon an investigation of the

**RESPONDENTS' APPENDIX 025**

request determines that the request warrants approval, the Warden refers the matter in writing with recommendation to the Office of General Counsel.

46. When an inmate's request is denied by the Warden, the inmate will receive written notice and a statement of reasons for the denial. The inmate may appeal the denial through the BOP's Administrative Remedy Procedure.

47. When the Director, Bureau of Prisons, denies an inmate's request, the Director shall provide the inmate with a written notice and statement of reasons for the denial within 20 workdays after receipt of the referral from the Office of General Counsel. A denial by the Director constitutes a final administrative decision.

48. Because a denial by the General Counsel or Director, Bureau of Prisons, constitutes a final administrative decision, an inmate may not appeal the denial through the Administrative Remedy Procedure.

49. Since March 20, 2020, 57 FCC Butner inmates have been granted compassionate release by their individual sentencing courts, based upon a variety circumstances, but also specifically referencing COVID-19.

## V. PETITIONERS' REVIEW FOR HOME CONFINEMENT UNDER THE CARES ACT, AND REQEUSTS FOR COMPASSIONATE RELEASE

50. Each of the Petitioners have been reviewed for home confinement eligibility, in accordance with the CARES Act. In addition, several of the Petitioners have submitted requests for compassionate release.

### A. Charles Hallinan, Reg. No. 75207-066

51. Inmate Hallinan is currently designated to LSCI Butner, and is in service of a 168-month sentence for RICO conspiracy, mail fraud, wire fraud, and

17

money laundering. His sentence commenced on July 30, 2018, and he is currently scheduled to release from his sentence on July 3, 2030, via good conduct time.

52. Inmate Hallinan was reviewed for home confinement under the CARES Act. He was denied placement due to the fact that he has served only 15.4% of his statutory term (as of June 1, 2020).

53. In a request dated April 28, 2020, and received by staff on May 7, 2020, inmate Hallinan requested a compassionate release based upon his medical conditions and COVID-19. See Attachment 1, Inmate Request to Staff, Charles Hallinan, Reg. No. 75207-066 (Apr. 28, 2020). His request was reviewed by his medical provider, who determined that he did not have a terminal or debilitated medical condition, nor does he suffer from a chronic or serious medical condition related to the aging process, or which substantially diminishes his ability to function in a correctional facility. His provider stated that he is independent with all of his activities of daily living. See Attachment 1, Email (May 13, 2020).

54. In a response dated May 14, 2020, the LSCI Butner Warden denied inmate Hallinan's request for compassionate release. See Attachment 1, Response to Charles Hallinan, Reg. No. 75207-066 (May 14, 2020).

**B. Josean Kinard, Reg. No. 33603-058**

55. Inmate Kinard is currently designated to LSCI Butner, and is in service of 70-month sentence for possession of a firearm by a felon, possession with intent to distribute cocaine, and possession with intent to distribute cocaine base. His

18

sentence commenced on February 15, 2018, and he is currently scheduled to release from his sentence on May 9, 2022, via good conduct time release.

56.     Inmate Kinard was reviewed for home confinement under the CARES Act. He was denied placement due to his current offense, as well as his PATTERN score of Medium recidivism risk.

57.     In a request dated May 11, 2020, inmate Kinard requested a compassionate release based upon COVID-19. See Attachment 2, Inmate Request to Staff, Josean Kinard, Reg. No. 33603-058 (May 11, 2020).   To date, a final determination has not been made regarding his request.

### C. Benjamin McCrae, Reg. No. 87682-007

58.     Inmate McCrae is currently designated to LSCI Butner, and is in service of a 60-month sentence for unlawful possession with intent to distribute cocaine base. His sentence commenced on July 11, 2019, and he is currently scheduled to release from his sentence on January 26, 2022, via good conduct time release.

59.     Inmate McCrae was reviewed for home confinement under the CARES Act and on April 24, 2020, and was referred for home confinement placement. Inmate McCrae has been approved for placement on home confinement beginning on June 9, 2020.

60.     To date, inmate McCrae has not submitted a request for compassionate release.

### D. Arnold Hill, Reg. No. 09077-007

19

**RESPONDENTS' APPENDIX 028**

61.     Inmate Hill is currently designated to LSCI Butner, and is in service of a life sentence for first-degree murder while armed.  His sentence commenced on May 12, 1989, and he is currently scheduled for a parole hearing in March 2022.

62.     Inmate Hill was reviewed for home confinement under the CARES Act. He was denied placement due to his current violent offense, as well as his history of violence.

63.     On May 6, 2020, inmate Hill submitted a request for compassionate release based upon the "Elderly with Medical Conditions" criteria.  See Attachment 3, Inmate Request to Staff, Arnold Hill, Reg. No. 09077-007 (May 6, 2020).  His request was reviewed by his medical provider, who determined that he did not have a terminal or debilitated medical condition, nor does he suffer from a chronic or serious medical condition related to the aging process, or which substantially diminishes his ability to function in a correctional facility.  His provider stated that he is independent with all of his activities of daily living.  See Attachment 3, Response to Arnold Hill, Reg. No. 09077-007 (May 15, 2020).

64.     In a response dated May 15, 2020, the LSCI Butner Warden denied inmate Hill's request for compassionate release.

**E. John Dailey, Reg. No. 39637-044**

65.     Inmate Dailey is currently designated to LSCI Butner, and is in service of a 27-month sentence for health care fraud, and false statements relating to health care matters.  His sentence commenced on September 21, 2019, and he is currently

20

scheduled to release from his sentence on August 20, 2021, via good conduct time release.

66.     Inmate Dailey was reviewed for home confinement under the CARES Act, and on April 17, 2020, was referred for home confinement placement. Inmate Dailey has been approved for placement on home confinement beginning on August 20, 2020.

67.     On December 1, 2019, inmate Dailey requested a compassionate release based upon a "Terminal Medical Condition", specifically an "aggressive non-curable cancer." See Attachment 4, Inmate Request to Staff, John Dailey, Reg. No. 39637-044 (Dec. 1, 2019). His request was reviewed by his medical provider, who noted that he has Stage IIB Mycosis Fungoides, which has a median survival rate of greater than 11 years. The oncologist noted that approximately one-quarter will progress to more advanced disease, while nearly 20 percent will die of causes related to Mycosis Fungoides. See Attachment 4, Email (Dec. 16, 2019).

68.     In a response dated December 18, 2019, the FMC Butner Warden denied inmate Dailey's request for compassionate release. See Attachment 4, Response to John Dailey, Reg. No. 39637-044 (Dec. 18, 2019).

**F. Lee Ayers, Reg. No. 03882-007**

69.     Inmate Ayers is currently designated to FCI Butner II, and is in service of an aggregate 180-month sentence for possession of a firearm during a crime of violence, assault with a dangerous weapon, unlawful possession of a firearm, and possession with intent to distribute cocaine base. His aggregate sentence commenced

21

on November 11, 2009, and he is currently scheduled to release from his aggregate sentence on March 5, 2022, via good conduct time release.

70.   Inmate Ayers is not currently being considered for home confinement under the CARES Act due to the fact that he is a Medium security level inmate, as well as his current violent offense, and a PATTERN score of High recidivism risk.

71.   In a request dated December 2, 2019, inmate Ayers requested a compassionate release based upon his medical condition. See Attachment 5, Inmate Request to Staff, Lee Ayers, Reg. No. 03882-007 (Dec. 2, 2019). His request was reviewed by his medical provider, who acknowledged his B12 deficiency, but did not meet the criteria for terminal or debilitated medical condition. See Attachment 5, Response to Lee Ayers, Reg. No. 03882-007 (Dec. 4, 2019).

72.   In a response dated December 4, 2019, the FCI Butner II Warden denied inmate Ayers' request for compassionate release. See Attachment 5, Response to Lee Ayers, Reg. No. 03882-007 (Dec. 4, 2019).

73.   In a letter dated May 11, 2020, attorneys for inmate Ayers submitted a request for compassionate release to the FCI Butner II Warden, citing his medical condition, race, gender, and the COVID-19 pandemic as the basis for the request. See Attachment 6, Letter to Warden of Butner Medium II (May 11, 2020). To date, a final determination has not been made with regard to this request.

**G. George Riddick, Reg. No. 72403-053**

74.   Inmate Riddick is currently designated to FCI Butner II, and is in service of a life sentence for murder while armed, possession of a firearm during

22

commission of a crime of violence, and carrying a pistol without a license. His sentence commenced on July 9, 2007.

75. Inmate Riddick was reviewed for home confinement under the CARES Act. He was denied home confinement placement based upon the fact that he is a Medium security level inmate, as well as his life sentence, his current violent offense, and a PATTERN score of Medium recidivism risk.

76. To date, inmate Riddick has not submitted a request for compassionate release.

**H. Jorge Maldonado, Reg. No. 63756-018**

77. Inmate Maldonado is currently designated to FPC Butner, and is in service of an aggregate 84-month sentence for conspiracy to commit wire fraud, wire fraud and aiding and abetting, theft of government property and aiding and abetting, fraud/identity theft, and, aggravated identity theft and aiding and abetting. His aggregate sentence commenced on March 24, 2017, and he is currently scheduled to release from his aggregate sentence on November 20, 2022, via good conduct time release.

78. Inmate Maldonado was reviewed for home confinement under the CARES Act, and determined to be eligible. He has requested a relocation of his Supervised Release district, and that request for relocation is currently pending with the U.S. Probation Office for his proposed release district. Upon approval of the relocation, his referral for home confinement will be forwarded to the Residential Reentry Management office for review and approval.

23

79.     In a request dated March 27, 2020, inmate Maldonado requested a compassionate release based upon a debilitated medical condition. See Attachment 7, Inmate Request to Staff, Jorge Maldonado, Reg. No. 63756-018 (Mar. 27, 2020). His request was reviewed by his medical provider, who noted that his medical condition was currently under control, and he remained fully independent and able to complete all of his own activities of daily living. See Attachment 7, Email (Apr. 23, 2020).

80.     In a response dated April 24, 2020, the FCI Butner Warden denied inmate Maldonado's request for compassionate release. See Attachment 7, Response to Jorge Maldonado, Reg. No. 63756-018 (Apr. 24, 2020).

I.  **Antwan Harris, 55584-056**

81.     Inmate Harris is currently designated to LSCI Butner, and is in service of an aggregate 173-month sentence for possession with intent to distribute marijuana and possession of a firearm in furtherance of a drug trafficking crime. His aggregate sentence commenced on March 7, 2012, and he is currently scheduled to release from his aggregate sentence on October 4, 2022, via good conduct time release.

82.     Inmate Harris is not currently being considered for home confinement under the CARES Act due to his current violent offense for possession of a firearm in furtherance of a drug trafficking crime.

83.     To date, inmate Harris has not submitted a request for compassionate release.

24

## J. Anthony Butler, Reg. No. 65583-056

84.     Inmate Butler is currently designated to LSCI Butner, and is in service of an aggregate 96-month sentence for felon in possession of a firearm and possession of a firearm in furtherance of a drug trafficking crime. His aggregate sentence commenced on September 26, 2019, and he is currently scheduled to release from his aggregate sentence on November 1, 2025, via good conduct time release.

85.     Inmate Butler is not currently being considered for home confinement under the CARES Act due to his current violent offense, a history of violence, and a PATTERN score of Medium recidivism risk. Additionally, inmate Butler has served only 21.8% of his statutory term (as of June 1, 2020).

86.     In a request dated April 16, 2020, inmate Butler requested a compassionate release based upon a debilitated medical condition and the COVID-19 pandemic. See Attachment 8, Inmate Request to Staff, Anthony Butler, Reg. No. (Apr. 16, 2020). His request was reviewed by his medical provider, who noted that he a 35-year old male whose current medical conditions remain under good control. His provider stated that he is fully independent and able to complete all of his own activities of daily living. See Attachment 8, Email (Apr. 22, 2020).

87.     In a response dated April 22, 2020, the LSCI Butner Warden denied inmate Butler's request for compassionate release. See Attachment 8, Response to Anthony Butler, Reg. No. 65583-056 (Apr. 22, 2020).

RESPONDENTS' APPENDIX 034

### K. Troy Titus, Reg. No. 58299-083

88.     Inmate Titus is currently designated to LSCI Butner, and is in service of a 360-month sentence for conspiracy to commit mail and wire fraud, wire fraud, mail fraud, promotional money laundering, and engaging in unlawful monetary transactions. His sentence commenced on April 15, 2010, and he is currently scheduled to release from his sentence on January 8, 2035, via good conduct time release.

89.     Inmate Titus is not currently being considered for home confinement under the CARES Act due to having served only 42.8% of his sentence, and having more than 34 years remaining to serve (as of June 1, 2020).

90.     To date, inmate Titus has not submitted a request for compassionate release.

## V.     FCC BUTNER COVID-19 DEATHS

91.     Since April 11, 2020, FCC Butner has had 15 inmates die as a result of COVID-19 and related complications.

### A. Charles Rootes, Reg. No. 95255-131

92.     Inmate Rootes was an 81-year-old, and, at the time of his death on April 11, 2020, was designated to FCI Butner. He was in service of a 99-year sentence for kidnapping, National Motor Vehicle Theft Act, and rape. His sentence commenced on June 27, 2001.

RESPONDENTS' APPENDIX 035

93.     At the time of his death, inmate Rootes was not being considered for home confinement under the CARES Act due to his current violent offenses, which include a sex offense, as well as a PATTERN score of Medium recidivism risk. Additionally, inmate Rootes was a Medium security level inmate.

94.     Inmate Rootes did not submit any requests for compassionate release while at FCC Butner.

**B. Gary Nixon, Reg. No. 21564-056**

95.     Inmate Nixon was a 57-year-old, and, at the time of his death on April 12, 2020, was designated to FCI Butner. He was in service of aggregate 155-month sentence for conspiracy to distribute with intent to distribute cocaine base, and a supervised release violation. His sentence commenced on December 13, 2018.

96.     At the time of his death, inmate Nixon was not being considered for home confinement under the CARES Act due to the fact that he was a Medium security level inmate, as well as a history of violence, a PATTERN score of High recidivism risk, and having received a serious incident report within the past year. Additionally, at the time of his death, inmate Nixon had served only 17.8% of his statutory term.

97.     Inmate Nixon submitted a request for compassionate release on March 25, 2020, based upon COVID-19 and his medical conditions. At the time of his death, a final determination had not been made with regard to his request.

**C. Andre Williams, Reg. No. 05933-017**

**RESPONDENTS' APPENDIX 036**

98.     Inmate Williams was a 78-year-old, and, at the time of his death on April 12, 2020, was designated to FCI Butner.  He was in service of a life sentence for armed bank robbery and possession of a firearm by a convicted felon.  His sentence commenced on February 2, 2005.

99.     At the time of his death, inmate Williams was not being considered for home confinement under the CARES Act due to the fact that he was a Medium security level inmate, as well as his current violent offense and a history of violence, a PATTERN score of Medium recidivism risk, and having received a serious incident report within the past year.

100.    Inmate Williams had not submitted any requests for compassionate release since 2019, when his prior request was denied upon a finding that he did not meet criteria for consideration.

**D. John Doe, Reg. No. 65795-053**

101.    Inmate Doe was a 46-year old, and, at the time of his death on April 13, 2020, was designated to FCI Butner.  He was in service of a 57-month sentence for making materially false statements.  His sentence commenced on October 10, 2018.

102.    At the time of his death, inmate Doe was not being considered for home confinement under the CARES Act due to the fact that he was a Medium security level inmate, as well as a history of sex offense and a PATTERN score of High recidivism risk.

103.    Inmate Doe did not submit any requests for compassionate release while at FCC Butner.

28

### E. Fabian Tinsley, Reg. No. 35909-007

104.    Inmate Tinsley was a 67-year-old, and, at the time of his death on April 16, 2020, was designated to FCI Butner. He was in service of a 23-year sentence for kidnapping while armed and aggravated assault while armed. His sentence commenced on March 25, 2005.

105.    At the time of his death, inmate Tinsley was not being considered for home confinement under the CARES Act due to the fact that he was a Medium security level inmate, as well his instant violent offense, and a PATTERN score of Medium recidivism risk.

106.    Inmate Tinsley had not submitted any requests for compassionate release since 2018, when he submitted a request but subsequently withdrew the request.

### F. William Minto, Reg. No. 20529-074

107.    Inmate Minto was a 73-year-old, and, at the time of his death on April 28, 2020, was designated to FPC Butner. He was in service of a 240-month sentence for conspiracy to distribute and possess with intent to distribute marijuana. His sentence commenced on November 14, 2006.

108.    At the time of his death, inmate Minto had been reviewed for home confinement under the CARES Act, and his referral for home confinement placement was pending final approval.

29

**RESPONDENTS' APPENDIX 038**

109.  Inmate Minto submitted a request for compassionate release on March 4, 2020, requesting consideration based upon the "Debilitated Medical Condition" and "Elderly with Medical Condition" criteria.  At the time of his death, a final determination had not been made with regard to his request.

### G. William Miller, Reg. No. 22111-055

110.  Inmate Miller was a 58-year old, and, at the time of his death on May 6, 2020, was designated to FCI Butner.  He was in service of a 14-year sentence for coercion and enticement of a minor.  His sentence commenced on December 17, 2014.

111.  At the time of his death, inmate Miller was not being considered for home confinement under the CARES Act due to being a Medium security level inmate, as well as his instant sex offense, a PATTERN score of High recidivism risk, and having received a serious incident report within the past year.

112.  Inmate Miller had not submitted any requests for compassionate release since 2019, when his prior request was denied based upon the U.S. Probation Office denying his proposed release plan.

### H. Jerry Dempsey, Reg. No. 22917-298

113.  Inmate Dempsey was a 59-year-old, and, at the time of his death on May 15, 2020, was designated to FCI Butner.  He was in service of a 130-month sentence for conspiracy to distribute methamphetamine.  His sentence commenced on February 17, 2012.

**RESPONDENTS' APPENDIX 039**

114. At the time of his death, inmate Dempsey was not being considered for home confinement under the CARES Act due to being a Medium security level inmate, and a PATTERN score of High recidivism risk.

115. Inmate Dempsey did not submit any requests for compassionate release while at FCC Butner.

### I. Eric Spiwak, Reg. No. 70347-056

116. Inmate Spiwak was a 73-year-old, and, at the time of his death on May 25, 2020, was designated to LSCI Butner. He was in service of a 188-month sentence for possession of child pornography. His sentence commenced on March 18, 2009.

117. At the time of his death, inmate Spiwak had been reviewed for home confinement under the CARES Act, but was denied placement on May 21, 2020, due to his instant sex offense.

118. Inmate Spiwak had not submitted any request for compassionate release since his prior request was denied in 2016, based upon a finding that he did not meet the criteria for consideration.

### J. Isaac Byers, Reg. No. 27114-058

119. Inmate Byers was a 52-year-old, and, at the time of his death on May 26, 2020, was designated to FPC Butner. He was in service of a 151-month sentence for possession with intent to distribute cocaine base. His sentence commenced on August 29, 2013.

RESPONDENTS' APPENDIX 040

120.   At the time of his death, inmate Byers was not being considered for home confinement under the CARES due to a history of violence and a PATTERN score of Medium recidivism risk.

121.   Inmate Byers did not submit any requests for compassionate release while at FCC Butner.

### K. Dongfan Chung, Reg. No. 45436-112

122.   Inmate Chung was an 84-year-old, and, at the time of his death on May 28, 2020, was designated to LSCI Butner.  He was in service of a 188-month sentence for economic espionage, acting as an agent of foreign government without prior notification to the Attorney General, and false statements.  His sentence commenced on February 8, 2010.

123.   At the time of his death, inmate Chung had been reviewed and referred for home confinement placement under the CARES Act.  On April 17, 2020, he was denied placement due to his instant offense.

124.   Inmate Chung did not submit any requests for compassionate release while at FCC Butner.

### L. Bernardo Olarta-Loaiza, Reg. No. 63404-018

125.   Inmate Olarta-Loaiza was a 63-year-old, and, at the time of his death on May 30, 2020, was designated to LSCI Butner.  He was in service of a 144-month sentence for maritime drug and conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States.  His sentence commenced on March 23, 2018.

32

126. At the time of his death, inmate Olarta-Loaiza was not being considered for home confinement under the CARES Act due to the fact that he was not a citizen of the United States.

127. Inmate Olarta-Loaiza did not submit any requests for compassionate release while at FCC Butner.

**M. Steve Robinette, Reg. No. 28177-057**

128. Inmate Robinette was a 79-year-old, and, at the time of his death on May 30, 2020, was designated to LSCI Butner. He was in service of a 216-month sentence for coercing a minor to engage in sexually explicit conduct for the purpose of producing child pornography. His sentence commenced June 7, 2012.

129. At the time of his death, inmate Robinette had been had been reviewed and referred for home confinement placement under the CARES Act. On May 21, 2020, he was denied placement due to his instant sex offense.

130. Inmate Robinette submitted a request for compassionate release on January 13, 2020, based upon the "Elderly with Medical Condition" criteria. His request was pending at the time of his death.

**N. David Grant, Reg. No. 11138-171**

131. Inmate Grant was a 63-year-old, and, at the time of his death on May 31, 2020, was designated to LSCI Butner. He was in service of an aggregate 180-month sentence for supervised release violations, and felon in possession of a firearm, ammunition, and possession with intent to distribute heroin. His sentence commenced April 11, 2019.

33

**RESPONDENTS' APPENDIX 042**

132.    At the time of his death, inmate Grant was not being considered for home confinement under the CARES Act due to a current violent offense, and a history of violence.  Additionally, at the time of his death, inmate Grant had served only 21.7% of his statutory term.

133.    Inmate Grant submitted a request for compassionate release on April 15, 2020, based upon the "Debilitated Medical Condition" criteria.  His request was denied by the Warden on April 22, 2020, based upon a finding that he did not meet criteria for consideration.

### O. Juan Ledoux-Moreno, Reg. No. 21198-069

134.    Inmate Ledoux-Moreno was a 74-year-old, and, at the time of his death on June 1, 2020, was designated to LSCI Butner.  He was in service of a 12-month and 1-day sentence for prohibited person in possession of a firearm, and possession with intent to distribute a controlled substance.  His sentence commenced August 20, 2019.

135.    At the time of his death, inmate Ledoux-Moreno had been reviewed and for home confinement placement under the CARES Act.  On April 17, 2020, he was denied placement.

136.    Inmate Ledoux-Moreno did not submit any requests for compassionate release while at FCC Butner.

137.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of June, 2020.

**RESPONDENTS' APPENDIX 043**

Phillip Clark
Complex Case Management Coordinator
Federal Correctional Complex
Butner, North Carolina

**RESPONDENTS' APPENDIX 044**